UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22299-WILLIAMS/GOODMAN

STEVEN MARTUCCI,

    Plaintiff,

vs.

LKE LLC, LEK INVESTMENTS LLC,
and SHADY GROVE PARTNERS, LLC,

    Defendants.
_____/

SHADY GROVE PARTNERS, LLC,

    Counter-Plaintiff,

vs.

STEVEN MARTUCCI and LINDA
MARTUCCI,

    Counter-Defendants.
_____/

### DEFENDANT, SHADY GROVE PARTNERS, LLC'S COUNTERCLAIM AGAINST STEVEN MARTUCCI AND LINDA MARTUCCI

Defendant, Shady Grove Partners, LLC ("Shady Grove") brings this Counterclaim and against Counter-Defendants, Steven Martucci and Linda Martucci, and alleges as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.    This Court has subject-matter jurisdiction over this Counterclaim and Third-Party Complaint, pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the

*Weiss Serota Helfman Cole & Bierman, P.L*

sum or value of $75,000, exclusive of interest and costs, and asserts claims between citizens of different states.

2. Shady Grove is a citizen of the State of Florida. Specifically, Shady Grove is Florida limited liability company with its principal place of business in Aventura, Florida, and is comprised of three members:[1]

    a. LKE LLC, a Delaware limited liability company with its principal place of business in Cedarhurst, New York. LKE is composed of five members, upon information and belief: (i) Steven S. Klaus, a citizen of the State of New York; (ii) the Fraddie Rapp Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus; (iii) the Jeffrey M. Klaus Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus; (iv) the Michael J. Klaus Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus; and (v) the Steven S. Klaus Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus. LKE LLC is therefore a citizen of the State of New York.

    b. LEK Investments LLC, a Delaware limited liability company with its principal place of business in Cedarhurst, New York. LEK Investments LLC is composed of five members, upon information and belief: (i) Steven S. Klaus, a citizen of the State of New York; (ii) the Fraddie Rapp Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus; (iii) the Jeffrey M. Klaus Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus; (iv) the Michael J. Klaus Irrevocable Trust, the trustee of which is, upon information and

---

[1] Grand Prairie Landmark A3 LLC, as discussed *infra*, was a member of Shady Grove upon formation and ceased being a member in September 2022.

  belief, Steven S. Klaus; and (v) the Steven S. Klaus Irrevocable Trust, the trustee of which is, upon information and belief, Steven S. Klaus. LEK Investments is therefore a citizen of the State of New York.

  c. Landmark Developments, LLC, is a Florida limited liability company with its principal place of business in Aventura, Florida. Landmark Developments LLC is composed of one members: the EBS Trust, the trustee of which is Julia Baytler, who is a citizen of the State of Florida. Landmark Developments, LLC is therefore a citizen of the State of Florida.

3. Steven Martucci is a citizen of the State of New Jersey.

4. Linda Martucci is a citizen of the State of South Carolina.

5. Venue is proper, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the counterclaims and third-party claims occurred in this district.

6. All conditions precedent required to bring this against Steven and Linda Martucci have been satisfied.

## GENERAL ALLEGATIONS

**A. *Shady Grove's Operating Agreement, Ownership, and Assets***

7. The applicable Shady Grove Operating Agreement was executed on or around September 27, 2021. *See* ECF No. 1-2.

8. Shady Grove's stated business purpose was to acquire, develop, and sell a parcel of land in Grand Prairie, Texas.

9. The Shady Grove Partners Operating Agreement provided that, upon formation, LKE was a holder of 55% of the Class A units, and Landmark was a holder of 45% of the Class A

units; LEK was the 100% Class B unit holder, and Grand Prairie Landmark A3 LLC was a 100% Class A Series 1 Preferred Unitholder.

10. The Operating Agreement provides for a liquidating distribution "in [the] sole and absolute discretion[]" of the Managers. ECF No. 1-1, Art. VII, § 7.3.

11. In the event of a liquidating distribution, payment of Shady Grove's debts and liabilities to its creditors (including Members, if applicable), shall be made first. ECF No. 1-1, Art. VII, § 7.3(a).

12. Additionally, the Operating Agreement provided for Class A series 1 Preferred Unitholders (i.e., Grand Prairie Landmark A3 LLC), "upon the repayment of all Outstanding Capital and all earned but unpaid Preferred Return to the Class A series 1 Preferred Unitholder, all Class A Series 1 Preferred Units shall immediately, automatically, and permanently be redeemed, retired as a Member Unit class and of no further legal effect . . . ." ECF No. 1-1, Art. III, § 3.1(c).

13. On or about September 9, 2022, the underlying investment property held by Shady Grove sold for $32,150,000.00. The sale of the underlying investment property is directly contemplated by the Operating Agreement.

14. The co-managers of Shady Grove (on paper), Julia Baytler and Steven Klaus, executed the HUD Statement for the underlying sale.

15. As a result of the sale and pursuant to the terms of the Operating Agreement, Grand Prairie Landmark A3 LLC received $2,927,808.22 and ceased being a member of Shady Grove, as directed by the Operating Agreement, on or about September 9, 2022.

16. As reflected on the HUD Statement, following the payment of closing costs, debts, and the value of the Class A Series 1 Preferred Units, Shady Grove's total profit from the sale was $18,245,326.95.

17. Said profit was, therefore, an asset and property of Shady Grove.

**B.** *Shady Grove's Dealings with Steven Martucci*

18. Although Steven Klaus was listed as a co-manager of Shady Grove in the Operating Agreement, he designated Steven Martucci to act on his behalf as the co-manager.

19. Indeed, since the execution of the Operating Agreement, Steven Martucci served as the face, mouthpiece, and authorized actor to conduct business on behalf of Shady Grove.

20. Additionally, all of Shady Grove's dealings with the Klaus Entities were conducted through Steven Martucci, whom the Klaus Entities also delegated as its agent.

21. Shady Grove had no direct dealings with Steven Klaus, because his managerial responsibilities were carried out by Steven Martucci.

**C.** *Steven Martucci's Malfeasance*

22. On or about September 12, 2022, Steven Martucci, acting on behalf of Steven Klaus as co-manager of Shady Grove, directed a liquidating distribution of the profits, and requested the following distribution on behalf of Shady Grove and the Klaus Entities:

| | |
|---|---|
| LEK Investments, LLC | $6,380,000.00 |
| LKE LLC | $2,120,000.00 |
| Linda Martucci (Steven Martucci's wife) | $3,495,346.90 |
| Igor Krivoruchko | $6,250,000.00 |
| Total | $18,245,346.90 |

23. This distribution was done <u>solely</u> at the direction of Steven Martucci, who at all material times herein, purported to have the authorization of Steven Klaus, as co-manager of Shady Grove.

24. Steven Martucci represented to Shady Grove and its agents that Steven Klaus agreed to Martucci's requested distribution scheme. Klaus now claims that he did not give such authorization to Martucci.

25. As a result, Linda Martucci, the wife of Steven Martucci, received $3,495,346.90 of Shady Grove's assets.

26. No consideration was given to Shady Grove for the distribution of $3,495,346.90 of Shady Grove's assets to Linda Martucci, at her husband's direction.

27. Additionally, Steven Martucci directed the distribution of Shady Grove's assets in a manner inconsistent with the percentages of ownership in the Operating Agreement.

## COUNT I – CONVERSION AGAINST STEVEN MARTUCCI

28. Shady Grove readopts and realleges the allegations contained in paragraphs 1- 27 as if fully set forth herein.

29. Shady Grove received the proceeds from the September 2022 land sale into its bank account. As such, Shady Grove was the owner of these proceeds.

30. Based on Claimants' claims, Steven Martucci wrongfully directed Shady Grove to distribute a portion of the proceeds from the sale, specifically $3,495,346.90, by directing said funds to his wife, Linda Martucci.

31. Steven Martucci directed the transfer of Shady Grove's property to Linda Martucci with the intent that he and Linda Martucci exercise an ownership inconsistent with Shady Grove's right of possession.

32. As a result of Steven Martucci's conversion, Shady Grove has also been subjected to a conversion claim from the Klaus Entities in a separate, on-going arbitration, American Arbitration Association Case No. 01-24-0005-6741 ("Arbitration Proceeding").

33. As a direct and proximate result of Steven Martucci's wrongful deprivation of Shady Grove's property, for which they are joint and severally liable, Shady Grove has been damaged.

WHEREFORE, Shady Grove demands from Steven Martucci the return of the $3,495,346.90, the funds that Steven Martucci caused to be distributed to Linda Martucci, plus pre- and post-judgment interest, costs, and the granting of such other and further relief as this Court deems just and proper.

**COUNT II – CIVIL THEFT, PURSUANT TO § 772.11, FLA. STAT. AGAINST STEVEN MARTUCCI**
**(In the Alternative to Count I)**

34. Shady Grove readopts and realleges the allegations contained in paragraphs 1- 27 as if fully set forth herein.

35. Steven Martucci was aware of the ownership percentages and the identities of each Shady Grove member.

36. Despite this knowledge, Steven Martucci personally directed the distribution of $3,495,346.90 of Shady Grove's funds to his wife, Linda Martucci, for which no consideration was received by Shady Grove.

37. As such, Steven Martucci knowingly caused the permanent deprivation of Shady Grove's property, deprived Shady Grove of its benefit and use of same, and appropriated this property for without being entitled to do so.

38. This is tantamount to theft.

39. Steven Martucci's conduct was done with the requisite intent, and with wanton, reckless, and willful disregard of the law or Shady Grove Operating Agreement.

40. As required by statute, Shady Grove's counsel sent a civil theft demand letter to Steven Martucci's on September 30, 2024. A true and correct copy of this civil theft demand letter is attached hereto as Exhibit "A."

41. To date, Shady Grove has not received a response to this civil theft demand letter from Steven Martucci.

42. Accordingly, Shady Grove has been damaged in excess of $75,000.00.

43. Martucci's actions as alleged herein are the proximate and actual causes of damages experienced by Shady Grove.

WHEREFORE, Shady Grove demands treble damages against Steven Martucci, the award of its reasonable attorney's fees and costs, pre-judgment and post-judgment interest, and the granting of such other and further relief as this Court deems just and proper.

## COUNT III – BREACH OF FIDUCIARY DUTY (COMMON LAW) AGAINST STEVEN MARTUCCI

44. Shady Grove readopts and realleges the allegations contained in paragraphs 1-27 as if fully set forth herein.

45. Shady Grove is a manager-managed limited liability company, of which Steven Klaus served as co-manager.

46. Steven Klaus designated Steven Martucci to act on his behalf as co-manager of Shady Grove.

47. As Steven Klaus's designee to perform his duties as co-manager, Steven Martucci occupied a special relationship with Shady Grove, including instilling trust and confidence in Shady Grove and its members.

48. Shady Grove was reliant on Steven Martucci, in its course of dealings with Steven Martucci to properly co-manage Shady Grove's business, pursuant to the Operating Agreement.

49. Steven Martucci breached his common law fiduciary duties of good faith, loyalty, and fair dealing by directing the unauthorized distribution of Shady Grove's assets.

50. Steven Martucci's breaches of his fiduciary duties to Shady Grove are the direct and proximate causes of the damages incurred by Shady Grove.

WHEREFORE, Shady Grove demands compensatory damages from Steven Martucci, as well as pre- and post-judgment interest, costs and any such further relief as the Court deems just and proper.

### COUNT IV – FRAUD IN THE INDUCEMENT AGAINST STEVEN MARTUCCI

51. Shady Grove readopts and realleges the allegations contained in paragraphs 1-27 as if fully set forth herein.

52. Steven Martucci made false statements of material fact to Shady Groves, namely, that the distribution of $3,495,346.90 to his wife, was a distribution authorized by Steven Klaus and agreed to by the Klaus Entities.

53. Steven Martucci knew of the falsity of the statement.

54. Steven Martucci intended that the allegedly false statement (the "authorized" distribution of assets to Linda Martucci) induce Shady Grove to effectuate said distribution.

55. Shady Grove justifiably relied on Steven Martucci's allegedly false statements, to the detriment of Shady Grove.

56. As a direct and proximate result of Steven Martucci's fraudulent inducement, Shady Grove has been damaged.

WHEREFORE, Shady Grove demands compensatory damages, as well as pre- and post-judgment interest, costs, and any such further relief as the Court deems just and proper.

**COUNT V – COMMON LAW INDEMNIFICATION AGAINST STEVEN MARTUCCI AND LINDA MARTUCCI**

57. Shady Grove readopts and realleges the allegations contained in paragraphs 1-27 as if fully set forth herein.

58. As a result of Steven and Linda Martucci's wrongful actions, Shady Grove has been subjected to claims asserted by the Klaus Entities in the Arbitration Proceeding.

59. Shady Grove, however, is wholly without fault for the Klaus Entities' claims against it.

60. Any liability of Shady Grove based on the vicarious liability of Steven Martucci, the designated agent of Shady Grove's co-manager Steven Klaus, and also Linda Martucci, the wrongful recipient of Shady Grove's assets.

61. As a result of Steven and Linda Martucci's vicarious liability, Shady Grove has been damaged and seeks indemnity against Steven and Linda Martucci, joint and severally, in the amount of the judgment entered against it in the Arbitration Proceeding, if any.

WHEREFORE, Shady Grove demands indemnity from Steven and Linda Martucci, joint and severally, in the amount of the judgment entered against it in the Arbitration Proceeding, if any, as well as pre- and post-judgment interest, costs, and any such further relief as the Court deems just and proper.

**COUNT VI – CIVIL CONSPIRACY AGAINST STEVEN AND LINDA MARTUCCI**

62. Shady Grove readopts and realleges the allegations contained in paragraphs 1-27 as if fully set forth herein.

63. Steven and Linda Martucci agreed to unlawfully deprive Shady Grove of its funds in the amount of $3,495,346.90, for their benefit and without consideration.

64. In furtherance of the conspiracy, Steven Martucci willfully and fraudulently represented to Shady Grove that he had the authority of Shady Grove's co-manager, Steven Klaus, and the consent of the Klaus Entities.

65. Linda Martucci then willfully accepted the transfer of the $3,495,346.90 of Shady Grove's funds into her bank account, in furtherance of this conspiracy.

66. As a result, Shady Grove has been unfairly subject to claims by the Klaus Entities in the Arbitration Proceeding.

67. Also as a direct and proximate result of this conspiracy, Shady Grove has been deprived of the use of its funds and, thus, damaged.

WHEREFORE, Shady Grove demands compensatory damages, as well as pre- and post-judgment interest, costs, and any such further relief as the Court deems just and proper.

**COUNT IX – CONVERSION AGAINST LINDA MARTUCCI**

68. Shady Grove readopts and realleges the allegations contained in paragraphs 1-27 as if fully set forth herein.

69. Shady Grove received the proceeds from the September 2022 land sale into its bank account. As such, Shady Grove was the owner of same.

70. Linda Martucci wrongfully received and accepted a portion of the proceeds from that sale, specifically $3,495,346.90.

71. Linda Martucci was aware at all material times that her receipt and acceptance of these funds was inconsistent with Shady Grove's right of possession and obtained without consideration.

72.     As a direct and proximate result of Linda Martucci's wrongful deprivation of Shady Grove's property, Shady Grove has been damaged.

WHEREFORE, Shady Grove demands from Linda Martucci the return of the $3,495,346.90, the funds that Linda Martucci wrongfully converted, plus pre- and post-judgment interest, costs, and any such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Shady Grove hereby demands a jury trial on all issues so triable.

Dated: January 9, 2025         Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
200 E. Broward Blvd., Suite 1900
Fort Lauderdale, FL 33301
Phone: (954) 763-4242
Fax: (954) 764-7770

By:   */s/ Anne R. Flanigan*
    Howard DuBosar
    Florida Bar No. 729108
    Primary e-mail address: HduBosar@wsh-law.com
    Secondary e-mail address: kdoyle@wsh-law.com
    Anne R. Flanigan
    Florida Bar No. 113889
    Primary e-mail address: aflanigan@wsh-law.com
    Secondary e-mail address: pgrotto@wsh-law.com