UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:24-cv-22299-WILLIAMS/GOODMAN

STEVEN MARTUCCI,

     Plaintiff

vs.

LKE LLC AND LEK INVESTMENTS, LLC,
and SHADY GROVE PARTNERS, LLC,

     Defendants.

_____/

LKE LLC AND LEK INVESTMENTS, LLC,

     Counter-Plaintiff,

vs.

STEVEN MARTUCCI,

     Counter-Defendants.

_____/

**LKE LLC AND LEK INVESTMENTS, LLC'S AMENDED ANSWER
TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM**

     LKE LLC ("LKE") and LEK Investments, LLC ("LEK", together with LKE, the "Klaus Defendants"), through undersigned counsel, file their Amended Answer and Affirmative Defenses to the First Amended Complaint [DE 32] of Plaintiff Steven Martucci ("Plaintiff" or "Martucci") and their Counterclaim against Martucci.

**<u>Jurisdiction</u>**

     1.    The Klaus Defendants deny the allegations in paragraph 1, except they admit that Plaintiff seeks to invoke the subject matter jurisdiction of this Court under 28 U.S.C. 1332(a)(1).

2.     The Klaus Defendants deny the allegations in paragraph 2 and respectfully refer all questions of law to the Court.

**Parties**

3.     The Klaus Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and, therefore, deny same.

4.     The Klaus Defendants deny the allegations in paragraph 4.

5.     The Klaus Defendants deny the allegations in paragraph 5.

6.     The Klaus Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and, therefore, deny same.

**Factual Allegations**

**LKE's Demand**

7.     The Klaus Defendants admit they commenced an arbitration with the American Arbitration Association against Plaintiff and other respondents. The Klaus Defendants state the Demand and exhibits speak for themselves. The Klaus Defendants deny the remainder of the allegations in paragraph 7 and respectfully refer the Court to the Demand for its content, meaning and import.

8.     The Klaus Defendants deny the allegations in paragraph 8 and respectfully refer the Court to the Demand for its content, meaning and import.

9.     The Klaus Defendants deny the allegations in paragraph 9 and respectfully refer the Court to the Demand for its content, meaning and import.

10.     The Klaus Defendants admit that Defendant SHADY GROVE PARTNERS, LLC ("Shady Grove Partners") sought to join Plaintiff to the Arbitration. The Klaus Defendants deny

the remaining allegations in paragraph 10 and respectfully refers the Court to the referenced document for its content, meaning and import.

11.     The Klaus Defendants deny the allegations in paragraph 11 and respectfully refer the Court to the Demand for its content, meaning and import.

12.     The Klaus Defendants deny the allegations in paragraph 12 and respectfully refer the Court to the Demand for its content, meaning and import.

13.     The Klaus Defendants deny the allegations in paragraph 13 and respectfully refer the Court to the Demand for its content, meaning and import.

14.     The Klaus Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and, therefore, deny same.

**Count I: Declaratory Relief**
**(LKE LLC and LEK Investments LLC)**

15.     The Klaus Defendants repeat and reallege the responses to the allegations in paragraphs 1-14 as if fully set forth herein.

16.     The Klaus Defendants deny the allegations in paragraph 16.

17.     The Klaus Defendants deny the allegations in paragraph 17.

18.     The Klaus Defendants deny the allegations in paragraph 18.

19.     The Klaus Defendants admit that they are adverse to the Plaintiff.  The Klaus Defendants deny the remainder of the allegations in paragraph 19.

20.     The Klaus Defendants deny the allegations in paragraph 20 and respectfully refer all questions of law to the Court.

**Count II: Declaratory Relief**
**(Shady Grove Partners, LLC)**

21.     The Klaus Defendants repeat and reallege the responses to the allegations in paragraphs 1-14 as if fully set forth herein.

22.     Count II is not directed to the Klaus Defendants and therefore no response is required.  To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 22.

23.     Count II is not directed to the Klaus Defendants and therefore no response is required.  To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 23.

24.     Count II is not directed to the Klaus Defendants and therefore no response is required.  To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 24.

25.     Count II is not directed to the Klaus Defendants and therefore no response is required. The Klaus Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 and, therefore, deny same.

26.     Count II is not directed to the Klaus Defendants and therefore no response is required. The Klaus Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 and, therefore, deny same.

**Responses to Allegations in Count III: Injunctive Relief**
**(LKE LLC and LEK Investments LLC)**

27.     The Klaus Defendants repeat and reallege the responses to the allegations in paragraphs 1-14 as if fully set forth herein.

28.     The Klaus Defendants deny the allegations in paragraph 28.

- 4 -

29.     The Klaus Defendants deny the allegations in paragraph 29.

30.     The Klaus Defendants deny the allegations in paragraph 30.

31.     The Klaus Defendants deny the allegations in paragraph 31.

**Responses to Allegations in Count IV: Injunctive Relief
(Shady Grove Partners, LLC)[1]**

32.     The Klaus Defendants repeat and reallege the responses to the allegations in paragraphs 1-14 as if fully set forth herein.

33.     Count IV is not directed to the Klaus Defendants and therefore no response is required. To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 33.

34.     Count IV is not directed to the Klaus Defendants and therefore no response is required. To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 34.

35.     Count IV is not directed to the Klaus Defendants and therefore no response is required. To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 35.

36.     Count IV is not directed to the Klaus Defendants and therefore no response is required.  To the extent a response is required, the Klaus Defendants deny the allegations in paragraph 36.

## <u>DENIAL OF ANY REMAINING ALLEGATIONS</u>

The Klaus Defendants hereby deny each and every allegation of the Complaint not herein admitted, controverted or specifically denied above.

---

[1] In the First Amended Complaint, there are two causes of action denominated "Count III". We have renumbered the second Count III as Count IV herein.

## **FIRST AFFIRMATIVE DEFENSE**

The dispute in the Arbitration from which Plaintiff seeks avoidance concerns the distribution of the sale proceeds of an improved parcel of real property in Grand Prairie, Texas (the "Property") managed by Shady Grove Partners. The Klaus Defendants, who are members of Shady Grove Partners, assert that Plaintiff, acting as their agent, violated his fiduciary duties to them, aided and abetted by Julia Baytler, Igor Krivoruchko and other Landmark entities by distributing the proceeds in violation of the terms of the Shady Grove Partners Amended and Restated Operating Agreement dated as of September 27, 2021 ("Shady Grove Partners OA"). Plaintiff dominated and controlled The Klaus Defendants such that under applicable law he may be compelled to arbitrate under Florida law. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

## **SECOND AFFIRMATIVE DEFENSE**

Plaintiff dominated and controlled the Klaus Defendants such that under applicable law he may be compelled to arbitrate as an alter ego of LEK, LKE and/or Shady Grove Partners.

## **THIRD AFFIRMATIVE DEFENSE**

Martucci, although ostensibly acting on behalf of the Klaus Defendants, personally and directly benefitted from the Shady Grove Partners OA by misdirecting sales proceeds to his wife as a cipher for himself. Therefore, Plaintiff is bound to arbitrate under the theory of estoppel and/or agency.

WHEREFORE, Defendants, LKE, LLC and LEK INVESTMENTS, LLC, request judgment dismissing the First Amended Complaint with prejudice, and for such other and further relief as the Court deems proper.

## LKE LLC AND LEK INVESTMENTS, LLC'S COUNTERCLAIM

LKE LLC ("LKE") and LEK Investments, LLC ("LEK", together with LKE, the "Klaus Defendants"), bring this Counterclaim against STEVEN MARTUCCI:

### The Parties, Jurisdiction and Venue

1.      LKE is a Delaware limited liability company with its principal place of business in Cedarhurst, New York. LKE is composed of five members: (i) Steven S. Klaus, a citizen of the State of New York; (ii) the Fraddie Rapp Irrevocable Trust, the trustee of which is Steven S. Klaus; (iii) the Jeffrey M. Klaus Irrevocable Trust, the trustee of which is Steven S. Klaus; (iv) the Michael J. Klaus Irrevocable Trust, the trustee of which is Steven S. Klaus; and (v) the Steven S. Klaus Irrevocable Trust, the trustee of which is Steven S. Klaus. LKE is therefore a citizen of the State of New York.

2.      LEK is a Delaware limited liability company with its principal place of business in Cedarhurst, New York. LEK is composed of five members: (i) Steven S. Klaus, a citizen of the State of New York; (ii) the Fraddie Rapp Irrevocable Trust, the trustee of which is Steven S. Klaus; (iii) the Jeffrey M. Klaus Irrevocable Trust, the trustee of which is Steven S. Klaus; (iv) the Michael J. Klaus Irrevocable Trust, the trustee of which is of which is Steven S. Klaus. LEK is therefore a citizen of the State of New York.

3.      Shady Grove Partners is a Florida limited liability company with its principal place of business in Aventura, Florida, and is comprised of three members: LKE, LEK and Landmark Developments LLC ("Developments").

4.      Non-party Developments is a Florida limited liability company with its principal place of business in Aventura, Florida. Developments has one member: the EBS Trust, the trustee

of which is Julia Baytler, who is a citizen of the State of Florida. Developments is therefore a citizen of the State of Florida.

5.      Shady Grove Partners is therefore a citizen of the States of New York and Florida.

6.      Martucci is a citizen of the State of New Jersey.

7.      This Court has subject-matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and asserts claims between citizens of different states. The Court also has subject-matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because it is so related to claims in the action within the Court's original jurisdiction that it forms part of the same case or controversy.

8.      Venue is proper, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the counterclaims occurred in this district.

## Facts Common to All Counterclaims

9.      The Shady Grove Partners OA identifies its managers as Julia Baytler ("Julia") and Steven Klaus.

10.     The organizational structure of Shady Grove Partners is as follows:



11.     Lester Klaus died in March 2023, and his son Steven Klaus assumed responsibility for the Klaus family investment arm, the Lester and Esther Klaus Family, LLC ("Klaus LLC").

12.     Martucci holds a master's degree in accounting and finance and was a former senior partner at KPMG. After leaving KPMG and subsequently declaring personal bankruptcy in January 2017, he was hired by Lester Klaus in 2019 to manage the Klaus family investments, including those relating to LKE and LEK. While Steven Klaus was a manager of certain Klaus entities on paper, Martucci claimed to be the CEO and CIO of Klaus LLC and effectively functioned in the capacity of CFO, had "complete responsibility over the [Klaus family] investment strategy."

13.     As discussed in greater detail below, Martucci grossly abused the trust placed in him by first by Lester Klaus – and thereafter Steven Klaus – and shielded his wrongdoing through various deceptions and stonewalling.

14.     However, when Steven Klaus began an investigation of the family finances under Martucci's guidance after Lester's death in 2023, he discovered significant and widespread

breaches of fiduciary duty committed by Martucci, and terminated his employment effective November 10, 2023.

15.     Landmark Companies LLC ("Landmark") is a real estate industrial development firm. Julia is the owner and CEO of Landmark, a manager of Shady Grove Partners, and an attorney admitted to the bar in the State of Massachusetts.

16.     Igor is Julia's husband, and is a partner at Landmark where he operates the land entitlement division. In 2019, Igor pled guilty to the felonies of bank and wire fraud in connection with a real property transaction.

17.     Developments is a Class A member of Shady Grove Partners, holding 45% of the Class A units.

18.     Landmark at the Grove I ("Grove I")[2], is a limited liability company organized under the laws of the State of Texas. Shady Grove Partners is the sole member of Grove I.

### The Corrupt Relationship Between Martucci and Igor

19.     Martucci was introduced to Landmark and met Igor in 2018 or 2019. It was Martucci's sole decision to invest Klaus LLC funds with Landmark. Martucci and Igor, functioning as co-conspirators, spoke every morning concerning potential Klaus investments in Landmark, including the Shady Grove Property. Contrary to his fiduciary duty to the Klaus Family, and standard industry practice, Martucci did not provide the Klaus Family with any terms, much less detailed terms of the Klaus Family relationship with Landmark, or document how compensation would be structured between them, which permitted him wide discretion to transfer Klaus Family funds to Landmark at will with no transparency to the Klaus Family. As Igor testified

---

[2] Landmark at the Grove, LLC ("Grove 0") is a Florida limited liability company formed by Julia in June 2020. On information and belief, Shady Grove Partners is the sole manager of Grove 0. Landmark advised that Grove I was created because the construction lender wanted a new entity formed at the time of construction.

in a deposition relating to a failed property investment funded by the Klaus Defendants, when Landmark needed money in connection with the development of a property, Igor simply asked Martucci for money, who would then transfer Klaus Family funds, no questions asked, without proper documentation or transparency to the Klaus Family. Martucci clearly agrees with Igor's sworn testimony that "It's better to work with other people's money."

20.     Indeed, Igor and Julia facilitated Martucci's use of Klaus Family funds as a personal piggy bank. For example, Martucci, Igor and Julia schemed in knowingly paying false invoices for work that was never performed on the Shady Grove Property by the respective recipients, who were all members of Martucci's immediate family.

21.     More specifically, Martucci's siblings Michelle and Scott were paid development and General Contractor fees on the Shady Grove project despite doing no work related to Shady Grove. Martucci's daughters, Lauren and Kristen, were paid on invoices issued for purported interior design consultation services relating to Shady Grove, that were also never performed. These payments exceeded $250,000.

22.     Pursuant to the Shady Grove Partners OA, its business purpose (the "Project") was "to acquire, own, develop, construct, improve, hold for investment, operate, manage, maintain, lease, finance, refinance, pledge, sell, exchange or otherwise dispose of or deal with the Land" which was defined as "12.13 total acre parcel of real property generally located in the City of Grand Prairie.

23.     On November 4, 2020, Grove I purchased the Property for $3,500,000. A downpayment was made in the amount of $100,000 in two $50,000 tranches. The balance of the purchase price of $3,498,165.15, sourced from LEK's capital contribution, was wired from a Grove 0 bank account directly to the title company on behalf of Grove I. Grove I financed the

construction of the Property from two loans from Hillcrest Bank in the amount of $10,560,000 and $591,000.

## The Project's Conflicting Ownership

24.    The Shady Grove Partners OA provides that LKE is a holder of 55% of the Class A units, and Developments a holder of 45% of the Class A units; LEK is the 100% Class B unit holder, and Grand Prairie Landmark A3 LLC ("Arctrust") is a 100% Class A Series 1 Preferred Unitholder.[3]

25.    However, wholly inconsistent with the Shady Grove Partners OA,[4] the Shady Grove Partners' 2020 tax return, prepared by Ehrlich & Company CPA's LLP ("Ehrlich") based on information provided by Martucci, reflected in its K-1s that LEK had a 60% interest and Landmark a 40% interest. These percentages are carried forward in the Shady Grove Partners' return for 2021, also prepared by Ehrlich based on information provided by Martucci, and the 2022 return prepared by Martucci, but there is no written amendment executed by the members altering their respective percentage ownership interests.

26.    Further demonstrating Martucci's and Landmark's mismanagement and irregularities, Grove I's operating agreement provides that it is owned 100% by Shady Grove Partners, yet the K-1s in Grove I's 2020 through 2022 tax returns all state that it is owned 60/40 by LEK/Landmark Companies. For illustration, Shady Grove Partners and Grove I's tax returns reflect the following percentages:

---

[3] Arctrust is no longer a member of Shady Grove because its membership interest was redeemed after the sale of the Shady Grove Property.

[4] Article 12.4 of the Shady Grove Partners operating agreement required any amendment to be approved by members in writing. There were no amendments that would explain the divergent tax returns.

|  | LEK | LKE | Landmark Companies | Preparer |
|---|---|---|---|---|
| 2020 | 60% | 0% | 40% | Ehrlich |
| 2021 | 60% | 0% | 40% | Ehrlich |
| 2022 | 60% | 0% | 40% | Martucci |

27.     Moreover, the 2020 Grove 0 tax return (prepared by Ehrlich) identifies Landmark as 40% owner and LEK as 60% owner, but the 2021 tax return (also prepared by Ehrlich) provides that LEK and LKE own Grove 0 60/40 at the start of the year, and 94.6/5.4 at year end, with Landmark having no interest.

28.     However, in January 2023, Martucci filed an amended 2021 return indicating LEK had 0% interest, LKE with 5% interest, and Landmark a 95% ownership interest, despite only having contributed 2.5% of the capital.

29.     Then, the 2022 tax return (also prepared by Martucci) provides the ownership percentages as LEK (19.1%), LKE (31.09), and Landmark (49.7), as illustrated here:

|  | LEK | LKE | Landmark Companies | Preparer |
|---|---|---|---|---|
| 2020 | 60% | 0% | 40% | Ehrlich |
| 2021 | 94.6% | 5.4% | 0% | Ehrlich |
| 2021 amended | 0% | 5% | 95% | Martucci |
| 2022 | 19.1% | 31.09% | 49.7% | Martucci |

30.     In order to maintain control of the Project, manipulate capital contributions, and the ultimate division of the proceeds, Martucci, purportedly representing the Klaus Defendants as the investors, took control of the tax reporting duties, ousting Ehrlich, as well as Igor, Julia and Landmark, who, as the persons and/or entities that were individually and collectively in control of the Project, should have been in charge of those functions. In fact, Julia was designated as the Tax Matters Member pursuant to Section 10.3 of the Shady Grove Partners OA.

### Sale of the Property and the Diversion to Linda Martucci

31.     The Property sold on September 9, 2022, for a contract price of $32,150,000

divided as follows, pursuant to the HUD-1 Statement:

| | |
|---|---|
| Cushman & Wakefield | $241,125.00 |
| Property Taxes, Title and Closing Charges | $699,619.91 |
| NBH Bank | $10,036,099.92 |
| Landmark At The Grove LLC | $18,245,346.95 |
| Arctrust III Investments LP | $2,927,808.22 |
| | $32,150,000.00 |

32.     Although the sum of $18,245,346.95 was apparently sent to a Landmark account

(either a Grove 0 or Grove I account), Martucci sent the following email to Igor on September 12,

2022 regarding distribution of the $18,245,346.95:

Igor

As we discussed - agreed:

IGOR $6,250,000

LEK Investments LLC ACCT#758818970 ROUTING: 021000021
AMOUNT: $6,380,000 525 Chestnut Street Cedarhurst, NY 11516

LKE LLC ACCT#758818858 ROUTING: 021000021
AMOUNT: $2,120,000 525 Chestnut Street Cedarhurst, NY 11516

Linda Martucci ACCT#381053236948 ROUTING: 02100339
AMOUNT: $1,800,000 1107 Barclay Boulevard Princeton, NJ 08540

Linda Martucci ACCT#483076298735 ROUTING: 021000322
AMOUNT: $1,695,346.90 1107 Barclay Boulevard, Princeton, NY 08540

Please confirm when sent. This should TOTAL $18,245,346.90

33.     Martucci's wife, Linda Martucci, had no interest in the Project or in Shady Grove

Partners, and no right to receive any funds from the sale, which Igor and Julia either knew or

should have known.[5] Moreover, Martucci's instructions for the distributions do not match the amounts that Martucci reported on the 2022 Shady Grove Partners tax return which were as follows:

| | | |
|---|---|---|
| LEK | $ | 7,796,976 |
| LKE | | 4,198,370 |
| Landmark Companies | | 6,250,000 |
| | $ | 18,245,346 |

34.     Thus, the difference between Martucci's instructions to Igor as to what LEK and LKE were to receive ($8,500,000) and what appears on the tax return as to what LEK and LKE supposedly received $11,995,346 ($7,796,976 + $4,198,370) is $3,495,346. That amount matches the sum of the two wire transfers Martucci directed Igor to send to his wife Linda ($1,800,000 + $1,695,346.90 = $3,495,346.)

**Damages**[6]

35.     The Klaus Defendants were damaged in the amount of Martucci's diversion to Linda Martucci in the amount of $3,495,346, which may be trebled pursuant to the Florida Civil Theft Statute.

36.     Alternatively, the Klaus Defendants are entitled to damages pursuant to the liquidation provisions set forth in Shady Grove Partners OA.

37.     Specifically, section 7.3 provides the waterfall for the distribution of proceeds upon a liquidating distribution. Since the sole purpose of Shady Grove Partners concerned the development and ownership of the Property, the sale of the Property is the quintessential

---

[5] Nor did Martucci have any personal entitlement or claim to funds from the sale, in the event that he now claims that the transfer to Linda was made for his benefit. Suffice it to say, "Igor" had no personal entitlement to the funds either.

[6] The Klaus Defendants commenced an arbitration against Landmark, Igor and Julia, amongst others, concerning the distribution of the proceeds from the sale of the Shady Grove property.  That arbitration was resolved by settlement. The Klaus Defendants assert that they were not made whole by the settlement and therefore may maintain this action.

liquidating distribution. As discussed above, the net proceeds from the $32,150,000 sales price for the Property (after deducting the closing costs, payoff of loans, etc.) yielded $18,245,346.95 to be divided. The Class B Member (LEK holding 100% of those units) is then entitled to two times its Initial Capital Contribution. *Id*. at 7.3(d), (e). According to the Shady Grove Partners OA, LEK's initial capital contribution was $4,500,000. While Developments' contribution is stated in the Shady Grove Partners OA as $758,000, Landmark concedes these funds were actually contributed by LEK.

38.     As a result, the doubling of LEK's capital contribution entitled it to $10,516,000 of the $18,245,346.95 leaving a balance of $7,729,346.95 to be distributed. Of that balance, LEK is entitled to 40%. *Id*. at 7.3(e) (Class B member to receive 2x capital contributions and 40% of the balance). This amounts to $3,091,738.78, meaning LEK should have received $13,607,738.78 of the net proceeds. The remainder of the $7,729,346.95 is then to be divided amongst the Class A members according to the pro rata proportion of their unit holdings, *i.e.*, 55% to LKE ($2,550,684.49) and to 45% to Developments ($2,086,923.68).

39.     The application of the Liquidating Distribution provision may be summarized as follows:



40.     LEK received $6,380,000 but should have received $13,607,738.78. LKE received $2,120,000, but should have received $2,550,684.49. Accordingly, the amount of sales proceeds that the Klaus Defendants were deprived of was $7,658,423.27.

<u>COUNT I</u>
<u>Breach of Fiduciary Duty</u>

41.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set forth herein.

42.     Martucci, as an agent to LEK and LKE, owed fiduciary duties to each of them, including the duties of loyalty, care and good faith.

43.     Martucci's diversion of funds due to LEK and LKE to Linda Martucci and his family members constitutes a breach of his fiduciary duty.

44.     The proximately caused damages are in an amount not less than $3,495,356.

## COUNT II
## Aiding and Abetting Breach of Fiduciary Duty

45.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set forth herein.

46.     Igor, Julia, Developments and/or Landmark owed the Klaus Defendants fiduciary duties as members and/or managers of Shady Grove Partners.

47.     Igor, Julia, Developments and/or Landmark breached their fiduciary duty by diverting $3,495,356 of the sales proceeds to Linda Martucci, and other moneys to Martucci's siblings and children.

48.     Martucci's directions regarding the improper distribution of sales proceeds and the provision of his wife's bank account information as a receptacle for the stolen funds establishes both Martucci's knowledge of Igor, Julia, Developments and/or Landmark's breach, as well as the substantial assistance in carrying out their breach.

49.     The proximately caused damages arising from Martucci's aiding and abetting the breach of fiduciary duty by Igor, Julia, Developments and/or Landmark are in an amount not less than $3,495,356.

## COUNT III
## Conversion

50.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set forth herein.

51.     The Klaus Defendants had an immediate possessory right to the $3,495,356 diverted to Linda Martucci as such funds were due and owing to the Klaus Defendants under the Shady Grove Partners OA.

52.     Martucci wrongfully interfered with the Klaus Defendants' possession of the $3,495,356 by diverting said funds to his wife Linda Martucci, who received the funds into her bank account, which is controlled by Martucci.

53.     The Klaus Defendants demanded a return of the funds by letter dated March 22, 2024, but Martucci refused to return the funds.

54.     The proximately caused damages are in an amount not less than $3,495,356.

## COUNT IV
## Aiding and Abetting Conversion

55.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set forth herein.

56.     The Klaus Defendants had an immediate possessory right to the $3,495,356 diverted to Linda Martucci as such funds were due and owing to the Klaus Defendants under the Shady Grove Partners OA.

57.     Igor, Julia, Developments and/or Landmark interfered with Klaus Defendants right to the funds by wrongfully transferring the funds to Linda Martucci.

58.     Igor, Julia, Developments and/or Landmark breached their fiduciary duty by diverting $3,495,356 of the sales proceeds to Linda Martucci.

59.     The Klaus Defendants demanded a return of the funds by letter dated March 22, 2024, but Igor, Julia, Developments and/or Landmark refused to return the funds.

60.     Martucci's directions regarding the improper distribution of sales proceeds and the provision of his wife's bank account information as a receptacle for the stolen funds establishes Martucci's substantial assistance to Igor, Julia, Developments and/or Landmark in their conversion of funds belonging to the Klaus Defendants.

61.     The proximately caused damages are in an amount not less than $3,495,356.

## COUNT V
## Civil Theft against Martucci

62.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set

forth herein.

63.     § 812.014, Fla. Stat., provides that:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain
> or to use, the property of another with intent to either temporarily or permanently:
> a)   Deprive the other person of a right to the property or a benefit from the property
> b)  Appropriate the property to his or her own use or to the use of any person not
> entitled to the use of the property.

64.     The elements of civil theft requiring a plaintiff to prove that a defendant:

> 1)  knowingly
> 2)  obtained or used, or endeavored to obtain or use, plaintiff's property with
> 3)  felonious intent
> 4)  either temporarily or permanently to a) deprive plaintiff of its right to or a
>     benefit of the property or b) appropriate the property to defendant's own use
>     or to the use of any person not entitled to the property.

65.     Martucci is liable under the civil theft statute as he knowingly and intentionally,

with wanton, reckless and/or willful disregard of the law and the Shady Grove Partners OA,

deprived the Klaus Defendants of proceeds from the sale of the Property which he diverted to his

wife.

66.     In addition, treble damages and attorney's fees stemming from civil theft are

available under §772.11, Fla. Stat., upon proof of clear and convincing evidence of a §812.014,

Fla. Stat., violation (*i.e.*, civil theft).  Specifically:

> (1)     Any person who proves by clear and convincing evidence
>         that he or she has been injured in any fashion by reason of
>         any violation of ss. 812.012-813.037 or s. 825.103(1) has a
>         cause of action for threefold the actual damages sustained
>         and, in any such action, is entitled to minimum damages in
>         the amount of $200, and reasonable attorney's fees and court
>         costs in the trial and appellate courts.  Before filing an action

> for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

67.     On March 22, 2024, the Klaus Defendants satisfied the pre-suit demand requirement in § 772.11, Fla. Stat., by serving Martucci with a written demand for payment in the amount of $10,486,038, *i.e.* triple the diversion to Linda Martucci.

68.     Martucci failed and/or refused to pay the demanded amount and is therefore liable under the statute for treble damages and the Klaus Defendants' attorney's fees.

<u>**COUNT VI**</u>
<u>**Tortious Interference with Contract**</u>

69.     The Klaus Defendants repeat and reallege the paragraphs 1-40 as if more fully set forth herein.

70.     The Shady Grove Partners OA is a valid contract between and among the Klaus defendants, Shady Grove Partners, and Developments.

71.     Martucci knew of the existence and contents of the Shady Grove Partners OA, including the distributions and membership interests set forth therein.

72.     Martucci intentionally and without justification caused Shady Grove and/or Julia or Igor to breach the Shady Grove Partners OA by directing the transfer of funds to his wife Linda in contradiction of the liquidation provisions of the agreement, thus depriving the Klaus Defendants of their rightful funds of $3,495,346.

73.     The proximately caused damages are in an amount not less than $3,495,356.

WHEREFORE, Defendants/Counter-Plaintiffs, LKE LLC and LEK Investments, LLC demand judgment in their favor and against Plaintiff, STEVEN MARTUCCI, and respectfully request that the Cout award damages as follows:

(i) on Count I of the Counterclaim, an amount not less than $3,495,356;

(ii) on Count II of the Counterclaim, an amount not less than $3,495,356;

(iii) on Count III of the Counterclaim, an amount not less than $3,495,356;

(iv) on Count IV of the Counterclaim, an amount not less than $3,495,356;

(v) on Count V of the Counterclaim, an amount not less than $10,486,038;

(vi) on Count VI of the Counterclaim, an amount not less than $3,495,356; and

awarding to the Klaus Defendants their pre- and post-judgment interest, disbursements and costs, including their reasonable attorney's fees, and any such other and further relief that the Court deems just, proper and equitable.

Dated: February 3, 2025

BY:

LEECH TISHMAN ROBINSON BROG, PLLC

By: ___/s/ William A. Rome_____
William A. Rome, *Pro Hac Vice*
Michael A. Eisenberg, *Pro Hac Vice*
One Dag Hammarskjöld Plaza
885 Second Avenue, 3rd Floor
New York, NY 10017
Tel: (212) 603-6300
*Attorneys for for LKE, LLC and
LEK INVESTMENTS, LLC*

SHENDELL & POLLOCK, P.L.
Seth A. Kolton
Florida Bar No. 21045
2700 N. Military Trail, Suite 150,
Boca Raton, Florida 33431-1809
Tel: 561 241-2323
seth@shendellpollock.com
*Local Counsel for for LKE, LLC and
LEK INVESTMENTS, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of February, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**SHENDELL & POLLOCK, P.L.**
951 Yamato Road, Suit 280
Boca Raton, Florida 33431-1809
Tel: 561 241-2323
Fax: 561-241-2330

By: /s/ *Seth A. Kolton, Esq.*
 Seth Kolton, Esq.
 Florida Bar No. 21045
 seth@shendellpollock.com
 donna@shendellpollock.com
 grs@shendellpollock.com
 *Local Counsel for LKE, LLC and*
 *LEK INVESTMENTS, LLC*